**Robin Peter WILLIAMS, Respondent,**

v.

**Patricia Lorena WILLIAMS, Appellant.**

No. WD 56703.

Missouri Court of Appeals, Western District.

Dec. 7, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2000.

Application for Transfer Denied March 21, 2000.

John Henry Edmiston, Warrensburg, for appellant.

Leonard Breon, Warrensburg, for respondent.

PAUL M. SPINDEN, Judge.

Patricia Williams appeals the circuit court's judgment denying her motion to increase her former husband's child support obligation. She complains that the circuit court's judgment "was not sup-

ported by the substantial evidence [and] was against the weight of the evidence." She asked the circuit court to modify Robin Peter Williams' child support obligation to the couple's two children because expenses in providing for them had increased significantly during the eight years since the circuit court set the child support amount. Because the circuit court's judgment was against the weight of the evidence and because it applied erroneous standards of law, we reverse its judgment and remand with instructions.

Patricia Williams asked the circuit court to increase the $500 of child support that Robin Williams is obligated to pay each month ($250 to each of the couple's two children). That amount was $436 less than the amount that a Form No. 14 calculation would have determined, but, in the original dissolution of marriage proceedings in 1991, both parties stipulated that $500 was the proper amount, and the circuit court accepted it as proper. The couple's children were ages two and six at the time of the divorce.

Patricia Williams filed a motion on September 29, 1997, asking the circuit court to modify Robin Williams' obligation "to an amount in conformity with . . . Rule 88.01[.]" At a hearing to consider the motion, Patricia Williams testified that her children's clothes, food, dental care, and extracurricular activities were costing her significantly more than what they did when the couple divorced. She estimated that clothing costs alone were four to five times more than they were in 1990 and that food costs had at least doubled during that time. She specifically noted that she spent $38 to $60 more per pair for the children's shoes and that the cost of jeans for the children had risen to $20 to $40 a pair. She also reported that, because of the children's quick growth—especially her son's—she had to replace the children's clothing more often. She said that she faced significant orthodontist expenses for her daughter and that her daughter wanted to take voice lessons. She reported that her son wanted to play soccer which required registration fees and purchase of equipment. She also told the circuit court that she wanted to move from a two-bedroom apartment to a three-bedroom apartment so her son and daughter could each have a bedroom. She acknowledged that work-related child care expenses had decreased 39 percent since the divorce and that her income had increased by 151 percent. Robin Williams' income had increased 47 percent. Robin Williams did not contradict any of Patricia Williams' evidence of increased expenses.

The circuit court denied Patricia Williams' motion on the ground that she had not demonstrated sufficiently changed circumstances. The circuit court acknowledged Patricia Williams' increased costs of providing for the children, but it decided that the increases resulted "primarily" from Patricia Williams' choice of Colorado Springs for her residence "wherein, under her testimony, living expenses are greater than they are locally[.]" The circuit court noted that it had contemplated that "the children would increase in age over time" when it accepted the agreed-to child support amount in 1991. The circuit court also compared the amount of child support that a Form No. 14 calculation set as the presumptively correct amount with what the presumed amount would have been in 1991 and decided that the amount had decreased. The circuit court reasoned that Robin Williams' child support obligation should not increase above $500 a month she was receiving if the presumptively correct child support amount had decreased from what it would have been in 1991. Finally, the circuit court concluded from reading this court's decision in *Riley v. Rollo*, 913 S.W.2d 382 (Mo.App.1996), that it should deny Patricia Williams' request for a modification because Robin Williams was paying $100 a month for his children's education and was providing insurance for his children—the conditions which caused the circuit court to accept less than the Form No. 14 amount in 1991.

■ The circuit court erred. It applied erroneous standards in determining whether to grant or to deny Patricia Williams' request, and it miscomprehended this court's ruling in *Riley*.

The circuit court erred in concluding that Patricia Williams did not establish a change in circumstances significant enough to warrant modification of Robin Williams' child support obligation. The circuit court accepted Patricia Williams' reports that the children's clothing costs had increased four to five times over what they cost in 1991 and that costs of providing them with food had doubled in that time. She also articulated a need for a larger apartment. This was "a showing of changed circumstances so substantial and continuing as to make the [child support] terms unreasonable."[1] This should have caused the circuit court to turn to Form No. 14 to calculate what the proper amount of child support should be.

■ Instead, the circuit court concluded that it should disregard the increased expenses on the ground that they resulted from Patricia Williams' decision to live in Colorado Springs. This was reversible error for two reasons.

■ First, it was contrary to the weight of the evidence. Although Patricia Williams acknowledged that living costs were higher in Colorado Springs, nothing in the record supported a notion that clothes cost four to five times more there than they do in Warrensburg, or that food there costs twice as much as food does in Warrensburg. In fact, an assumption explicitly underlying the Form No. 14 guidelines is that Missouri parents' expenditures for child-rearing do not differ significantly from national estimates.[2] To the extent that the circuit court disagreed with Patricia Williams' choices of clothing, as the

record seems to suggest that it did, it failed to comprehend the General Assembly's mandate in § 452.340, RSMo 1998, that, among other factors, it should consider "[t]he standard of living the child would have enjoyed had the marriage not been dissolved[.]"

■ Second, even if clothes and food do cost more in Colorado Springs than they do in Warrensburg, the circuit court should not have concerned itself with where Patricia Williams lived. Locale is a concern in custody considerations, but Form No. 14's purpose is to calculate what the law deems the appropriate amount of child support to be, wherever a parent may be living with a child. If a parent can live in Colorado Springs with her children and "make ends meet" on the Form No. 14 amount, the circuit court should not concern itself that she could live more cheaply in Warrensburg. To have denied her request for a modification on that basis was unjustified.

■ The circuit court's action suggests that it perceived that its role was to hold Patricia Williams to the bargain that she entered in 1991. This is not a contract action. The primary purpose of child support is to provide for a child's welfare. *Williams v. Williams*, 510 S.W.2d 452, 455 (Mo. banc 1974). The circuit court's goal should have been to ascertain what amount of child support it should order Robin Williams to pay to assure that his children are provided for adequately within the bounds of his ability to pay. The law presumes this amount to be the amount derived from calculating Form No. 14. Holding Patricia Williams to her "bargain" without concern for her children's welfare obstructs the purpose of child support.

■ The circuit court commented that it contemplated that the Williamses' children

---

1. Quoting § 452.370.1, RSMo 1998.

2. In setting out what assumptions underlie Form No. 14, the Supreme Court has said, "The relevant factors and assumptions used to calculate the child support guidelines include: (1) There is no evidence that the expenditure patterns of parents in Missouri differ significantly from national estimates of child-rearing costs."

would grow older when it accepted the stipulated-amount in 1991. This does not mean, however, that the circuit court should later turn a "blind eye" to the children's current needs and insist on enforcing an inadequate amount. Among the General Assembly's purposes in providing for modification of child support payments is to give the circuit court an opportunity to correct an inadequate child support payment even if it seemed reasonable when it was first contemplated.

■ The circuit court compared what the Form No. 14 amount would have been in 1991 with what it was at the time of the modification hearing. It determined that the Form No. 14 amount at the time of hearing was $924 a month and that in 1991 it would have been $936 a month. The circuit court erroneously reasoned that this demonstrated that, if $500 a month was sufficient in 1991, it should still be sufficient. This logic would be valid only if circumstances had not changed and had not made the $500 a month of support unreasonable. The circuit court acknowledged that circumstances had changed.

Finally, the circuit court noted that it had approved the $500 amount originally because Robin Williams was providing insurance to cover the children's medical needs and was "providing for the children's college education." The circuit court noted that, in *Riley v. Rollo*, 913 S.W.2d 382 (Mo.App.1996), this court affirmed the enforcement of an original child support order that ordered less than the Form No. 14 amount because "the basis for the agreed reduction in the amount of presumed child support still exist[ed]." *Id.* at 384. The circuit court misunderstood *Riley*.

The *Riley* court reached its conclusion after agreeing with the circuit court that circumstances had *not* changed sufficiently to justify a modification. Moreover, the request for modification in *Riley* was made after only one year. The *Riley* court reasoned that, because circumstances had not changed significantly, the agreed-to

amount, having been reviewed by the circuit court for adequacy, should remain in effect. Patricia Williams, on the other hand, showed the circuit court that circumstances *had* changed to a degree that warranted modification.

■ We are disturbed, moreover, by the circuit court's justifying its acceptance of only 53 percent of the Form No. 14 amount in 1991 on the ground that Robin Williams was providing insurance for his children and paying $100 a month toward their college education. Patricia Williams testified without contradiction that Robin Williams' employer provided most of the insurance at no cost to him. He did pay $19 a month for dental insurance. Reducing Robin Williams' child support obligation by $436 a month because he was paying $119 a month for dental insurance and a college savings bond is indefensible. "[E]ducational expenses are not included in the basic Form [No.] 14 calculation of presumed child support." *Shiflett v. Shiflett*, 954 S.W.2d 489, 493 (Mo.App.1997). Saving for anticipated college expenses is an extraordinary expense that is to be added to—not subtracted from—a Form No. 14 amount which is what the law deems to be what a child requires to satisfy his present needs. *Id.* at 493–94. The circuit court certainly was not justified in perpetuating the error by refusing to increase the amount when Patricia Williams asked it to do so. Robin Williams' first obligation is to provide adequate care for his children. In the face of evidence that $500 is not providing adequate care, the circuit court should have granted Patricia Williams' request for a modification.

Because the circuit court erred in its judgment, we reverse it. We remand the case to the circuit court with instructions that it enter judgment ordering Robin Williams to pay $924 a month in child support until such time as the circuit court's review causes it to conclude that this amount is unjust or inappropriate after considering all relevant factors.

PATRICIA BRECKENRIDGE, Presiding Judge, and JOSEPH M. ELLIS, Judge, concur.